**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JULIO CESAR BONILLA,<br><br>    Petitioner,<br><br>    v.<br><br><br>PAUL D. BRAZELTON,<br><br>    Respondent. | Case No. 1:13-cv-01710-LJO-BAM-HC<br><br>FINDINGS AND RECOMMENDATIONS TO DENY PETITIONER'S MOTION FOR A STAY (DOC. 14)<br><br>FINDINGS AND RECOMMENDATIONS TO RESCHEDULE THE DEADLINE FOR THE FILING OF PETITIONER'S TRAVERSE<br><br>**OBJECTIONS DEADLINE:<br>THIRTY (30) DAYS** |

Petitioner is a prisoner proceeding pro se and in forma pauperis with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. The matter has been referred to the Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1) and Local Rules 302 through 304. Pending before the Court is the Petitioner's motion to hold the petition in abeyance, which was filed on January 6, 2014. Respondent filed opposition on March 4, 2014, and Petitioner filed a reply on March 13, 2014.

    I.  Background

In the petition filed on October 24, 2013, Petitioner alleges that he is serving a sentence of forty-four years to life imposed on

1

March 28, 2011, by the Superior Court of the State of California, County of Merced (MCSC) for convictions of first and second degree murder with enhancements for use of a knife with respect to both victims.  (Pet., doc. 1, 1-2.)  Petitioner raises the following claims in the petition: 1) a pretrial statement made by Petitioner during questioning by law enforcement officers was admitted into evidence in violation of his Miranda rights; and 2) the failure to instruct the jury on the lesser included offenses of voluntary and involuntary manslaughter violated his rights to a fair trial guaranteed by the Fifth, Sixth, and Fourteenth Amendments.  (Id. at 6-10.)  Respondent answered the petition on March 23, 2014.  The deadline for filing a traverse will be scheduled after the conclusion of the instant motion proceedings.

    II.  Motion for a Rhines Stay

    Petitioner moves for a stay to permit him to exhaust claims that there was insufficient evidence of first degree murder and of second degree murder, and that Petitioner suffered the ineffective assistance of counsel when appellate counsel failed to raise these issues on direct appeal.  (Doc. 14, 1-2.)  Petitioner argues that the evidence shows that one murder victim, William Cisneros, killed the other murder victim, Maria Clara Cisneros (Clara), who was William's wife.  William then came after Petitioner and tripped and fell; Petitioner grabbed the knife and stabbed William to death, fearing that if William regained his stance he would kill Petitioner because William had discovered Petitioner and Clara engaging in sexual relations.  (Id. at 1-2.)  Petitioner argues that because in relation to William he acted in self-defense and/or the sudden heat of passion, Petitioner did not form malice, which is a necessary

2

element of murder under California law, let alone premeditation and deliberation, which are elements of first degree murder under California law.  Petitioner contends that under the evidence, he is guilty at most of the voluntary or involuntary manslaughter of William, and he is completely innocent of the murder of Clara.

Respondent argues that Petitioner's claims of insufficiency of the evidence are without merit, there was no ineffective assistance of counsel, and a stay under Rhines is inappropriate.

### A.   Rhines Stay

A district court has discretion to stay a petition which it may validly consider on the merits.  Rhines v. Weber, 544 U.S. 269, 276 (2005); King v. Ryan, 564 F.3d 1133, 1138-39 (9th Cir. 2009), cert. den., 558 U.S. 887.  A petition may be stayed either under Rhines, or under Kelly v. Small, 315 F.3d 1063 (9th Cir. 2003).  King v. Ryan, 564 F.3d at 1138-41.

Under Rhines, the Court has discretion to stay proceedings; however, this discretion is circumscribed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA).  Rhines, 544 U.S. at 276-77.  In light of AEDPA's objectives, "stay and abeyance [is] available only in limited circumstances" and "is only appropriate when the district court determines there was good cause for the petitioner's failure to exhaust his claims first in state court."  Id. at 277-78.  A stay of a mixed petition pursuant to Rhines is required only if 1) the petitioner has good cause for his failure to exhaust his claims in state court; 2) the unexhausted claims are potentially meritorious; and 3) there is no indication that the petitioner intentionally engaged in dilatory litigation tactics.  Id.

3

A petition may also be stayed pursuant to the procedure set forth by the Ninth Circuit in Kelly v. Small, 315 F.3d 1063. Under this three-step procedure: 1) the petitioner files an amended petition deleting the unexhausted claims; 2) the district court stays and holds in abeyance the fully exhausted petition; and 3) the petitioner later amends the petition to include the newly exhausted claims. See, King v. Ryan, 564 F.3d at 1135. However, the amendment is only allowed if the additional claims are timely. Id. at 1140-41.

A stay under Rhines permits a district court to stay a mixed petition and does not require that unexhausted claims be dismissed while the petitioner attempts to exhaust them in state court. In contrast, a stay pursuant to the three-step Kelly procedure allows a district court to stay a fully exhausted petition, and it requires that any unexhausted claims be dismissed. Jackson v. Roe, 425 F.3d 654, 661 (9th Cir. 2005).

The Supreme Court has not articulated what constitutes good cause under Rhines, but it has stated that "[a] petitioner's reasonable confusion about whether a state filing would be timely will ordinarily constitute 'good cause' for him to file" a "protective" petition in federal court. Pace v. DiGuglielmo, 544 U.S. 408, 416 (2005). The Ninth Circuit has held that the standard is a less stringent one than that for good cause to establish equitable tolling, which requires that extraordinary circumstances beyond a petitioner's control be the proximate cause of any delay. Jackson v. Roe, 425 F.3d 654, 661 62 (9th Cir. 2005). The Ninth Circuit has recognized, however, that "a stay and abeyance should be available only in limited circumstances." Id. at 661 (internal

quotation marks omitted); see, Wooten v. Kirkland, 540 F.3d 1019, 1024 (9th Cir. 2008), cert. denied, - U.S.- , 129 S.Ct. 2771 (2009) (concluding that a petitioner's impression that counsel had exhausted a claim did not demonstrate good cause).

Recently, the Ninth Circuit Court of Appeals found that a district court had abused its discretion in deciding that the Rhines good cause standard was not satisfied where a § 2254 petitioner provided argument and supporting evidence that his appellate counsel was ineffective in failing to investigate and raise the ineffective assistance of counsel (IAC) at trial for trial counsel's failure to present significant mitigating evidence at the penalty phase of the petitioner's capital murder trial. Blake v. Baker, 745 F.3d 977 (9th Cir. 2014), pet. cert. filed June 14, 2014, no. 13-1488. The court in Blake stated the following regarding the good cause standard:

> The good cause element is the equitable component of the Rhines test. It ensures that a stay and abeyance is available only to those petitioners who have a legitimate reason for failing to exhaust a claim in state court. As such, good cause turns on whether the petitioner can set forth a reasonable excuse, supported by sufficient evidence, to justify that failure. See Pace, 544 U.S. at 416, 125 S.Ct. 1807 ("A petitioner's reasonable confusion... will ordinarily constitute 'good cause' [under Rhines ]...." (emphasis added)). (Footnote omitted.)  An assertion of good cause without evidentiary support will not typically amount to a reasonable excuse justifying a petitioner's failure to exhaust. In Wooten, for example, the petitioner's excuse that he was "under the impression" that his claim was exhausted was not a reasonable excuse because no evidence indicated that the petitioner's ignorance was justified. To the contrary, the petitioner's attorney sent him a copy of his state petition, which did not mention the unexhausted claim, and the petitioner did not argue that his attorney provided ineffective assistance for failing to include the claim. 540 F.3d at 1024 n. 2; see also King v. Ryan, 564 F.3d

5

>   1133, 1138 (9th Cir.2009) (holding that the district court
>   did not abuse its discretion in finding that the
>   petitioner did not establish good cause when his factual
>   allegations were "insufficiently detailed").
>   ....
>
>   While a bald assertion cannot amount to a showing of good
>   cause, a reasonable excuse, supported by evidence to
>   justify a petitioner's failure to exhaust, will.

Id. at 982.  The court noted that the sufficiency of IAC by post-conviction as good cause is both consistent with and supported by the Supreme Court's recent opinion in Martinez v. Ryan, – U.S. –, 132 S.Ct. 1309 (2012).  In that case, the Court established a limited exception to the rule of Coleman v. Thompson, 501 U.S. 722, 753 (1991), to the effect that IAC by state post-conviction counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial.  Id., 132 S.Ct. at 1315.  The standard stated in Martinez was a showing of ineffective assistance under the standard of Strickland v. Washington, 466 U.S. 668 (1984).  Martinez, 132 S.Ct. 1318.  The court in Blake stated, "[W]e hold that the Rhines standard for IAC-based cause is not any more demanding than the cause standard articulated in Martinez."  Blake v. Baker, 745 F.3d at 984.

    B.   Facts

Petitioner lived with the murder victims, whose bodies were found decomposing in the house weeks after they were last known to have been alive.  Petitioner suddenly and without notice departed

6

from the house around the time of the homicides and contacted family members whom he had not seen for years who gave him refuge in locations out of town and then out of state.  Articles that had been removed from the victims' residence were found with the people who took Petitioner in or helped him out after the homicide.  (Doc. 1, 16-20.)

The central facts of record were set forth in the opinion of the Court of Appeal of the State of California, Fifth Appellate District (CCA) in People v. Bonilla, case number F062175, filed September 25, 2012.  (Doc. 1, 16-29.)  The prosecution's evidence included the following:

> Defendant related that, on the Saturday in question, William arrived about 8:00 a.m. with food that he always brought on Saturdays. William and Clara started arguing. William had a knife. William and Clara came towards him. Defendant tried to stop their fighting so he could leave. They told defendant to go back into the bedroom. William stabbed Clara. William went toward defendant with the knife saying he was going to kill him. When William tried to strike at him, defendant took the knife from William and stabbed William with it. William took the knife back from defendant and defendant went outside.
>
> When informed that William had more than one stab wound and asked how he thought that happened, defendant said he was "already crazy and maybe out of desperation, and since [defendant] was all drowsy and everything."
>
> Defendant returned to the house 20 to 30 minutes later. William was still alive, kneeling on the kitchen floor. William had the knife in his hand, was saying "[d]ogs[, d]ogs" and that he was going to kill defendant. Clara was dead, on the floor by the washing machine, with a cloth covering her face. Defendant got nervous and said, "'Well, he's going to kill me.'" That was when defendant said he "made the mistake." Defendant used William's knife to stab

7

William again. He did not know how many times he stabbed William. William tripped over Clara's feet and fell on top of her. Defendant cleaned up William's blood.

Defendant left, taking some clothes with him, as well as two televisions that he thought he could sell when he needed gas. He also took a rifle and jewelry, but only his jewelry that he had brought from Mexico. He grabbed the paperwork with William's birth certificate and the other things because he thought his papers were in there. He did not even look at what all he was taking.

(Doc. 1, 22-23.)

Further, Petitioner gave the following testimony:

Defendant usually arose around 7:00 a.m. on Saturdays, but this day, Clara woke him around 9:00 a.m. William had already left to buy food, something he did every Saturday.

Clara lay down in bed with defendant. The two were always careful; the dogs would be turned loose so they would bark when William got home. Defendant and Clara would use this as an alarm, and would separate if the dogs barked. On this day, however, Clara had already put the dogs up in their pen. William yelled at Clara from the living room, where he was pricking his finger to check his blood-sugar level. Clara went running out of defendant's bedroom toward the bathroom, holding her panties. She had her clothes with her so she could dress in the bathroom. She left her bra in defendant's room, however, and defendant believed William saw her naked.

Defendant heard Clara and William yelling profanity at each other. He left his room and saw them arguing. Clara was in the kitchen, while William was in the other little room where the broiler was. Defendant took Clara's hands and said to stop fighting. She pushed him and he pushed her back with his hands. He did so because she and William were having a very heated argument. When defendant pushed her, Clara scolded him and told him to go to sleep. She told defendant she would take care of this herself.

Defendant went to his room and turned on the radio so he would not hear them fight. When he turned off the radio, he did not hear anything, so he went toward the kitchen to see if everything was calm. He saw Clara lying on the

8

floor toward the broiler, with her feet facing the entrance of the kitchen. She was face up, and he thought she was already dead, because she was no longer moving and there was blood.

Defendant saw William with a long, thin knife that he habitually used to filet fish. William was standing almost over Clara. He said, "It's just you now, dog, that's left," and he came after defendant. Defendant pushed him and they briefly struggled in the kitchen. William tried to stab defendant with the knife. Defendant threw up an arm, then turned and went running out through the living room. As he did so, he pushed over the chair. He did not know if William was injured during this initial struggle. Defendant saw blood on the knife, but did not know if it belonged to Clara.

Defendant made it outside, but, because he was only wearing the shorts in which he slept and no shoes, he did not leave. He was crying and unable to think. Finally, he went back inside to see what had happened and at least put on some shoes. He went in through the front door, then looked in the kitchen. Clara's body was in the same place, but William had moved her feet away from the doorway and had covered her. William was with the body. He was crying, then he went after defendant again. Defendant ran, but could not get out because of Clara's body. Defendant ended up back in the broiler room, where William attacked him. Defendant had never seen William like that. William was almost like he had been possessed by the devil. He was an old man, but strong.

William tripped over Clara's feet, and defendant took the knife away from him and stabbed him, injuring him badly and killing him. It was defendant's life or William's. (Footnote omitted.) The two bodies stayed in the broiler room; defendant did not touch or position them. Seeing the two bodies, emotions overtook defendant; he cried and did not know what to do. Then he started to take things. He was looking for his documents, which Clara had in her dresser drawer. From his room, he took the things that were his. (Footnote omitted.) He did not know where to go. He telephoned Victorville, because he had a guitar with his niece's phone number on it. He did not call the police; although he wanted to turn himself in, he was scared.

9

(Id. at 25-27.)

### C. Analysis

The Court acknowledges that the ineffective assistance of appellate counsel may constitute good cause for the failure to exhaust claims of insufficiency of the evidence to support the convictions. In the instant case, to establish good cause, Petitioner would have to provide evidence supporting a conclusion that 1) counsel's representation fell below an objective standard of reasonableness under prevailing professional norms in light of all the circumstances of the particular case; and 2) unless prejudice is presumed, it is reasonably probable that, but for counsel's errors, the result of the proceeding would have been different. Strickland v. Washington, 466 U.S. 668, 687-94 (1984); Lowry v. Lewis, 21 F.3d 344, 346 (9th Cir. 1994).

However, if there is no merit to Petitioner's claims of insufficient evidence, then Petitioner could not show that counsel was ineffective in failing to raise those claims on direct appeal. Cf. James v. Borg, 24 F.3d 20, 27 (9th Cir. 1994) (failure to raise the issue of sufficiency of the evidence is not prejudicial where there was overwhelming evidence of guilt; failure to make a motion which would not have been successful is not ineffective assistance of counsel). Likewise, if the sufficiency of the evidence claims that are the basis of the motion for a stay are without merit, a Rhines stay is unwarranted regardless of good cause. Thus, the Court will address Petitioner's claims of sufficiency of the evidence.

To determine whether a conviction violates the constitutional guarantee of due process of law because of insufficient evidence, a

federal court ruling on a petition for writ of habeas corpus must determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  Jackson v. Virginia, 443 U.S. 307, 319, 20-21 (1979); Windham v. Merkle, 163 F.3d 1092, 1101 (9th Cir. 1998); Jones v. Wood, 114 F.3d 1002, 1008 (9th Cir. 1997).

All evidence must be considered in the light that is the most favorable to the prosecution.  Jackson, 443 U.S. at 319; Jones, 114 F.3d at 1008.  It must be recognized that it is the trier of fact's responsibility to resolve conflicting testimony, weigh evidence, and draw reasonable inferences from the facts; thus, it must be assumed that the trier resolved all conflicts in a manner that supports the verdict.  Jackson v. Virginia, 443 U.S. at 319; Jones, 114 F.3d at 1008.  The relevant inquiry is not whether the evidence excludes every hypothesis except guilt, but rather whether the jury could reasonably arrive at its verdict.  United States v. Mares, 940 F.2d 455, 458 (9th Cir. 1991).  Circumstantial evidence and the inferences reasonably drawn therefrom can be sufficient to prove any fact and to sustain a conviction, although mere suspicion or speculation does not rise to the level of sufficient evidence. United States v. Lennick, 18 F.3d 814, 820 (9th Cir. 1994); United States v. Stauffer, 922 F.2d 508, 514 (9th Cir. 1990); see Jones v. Wood, 207 F.3d at 563.  The court must base its determination of the sufficiency of the evidence from a review of the record.  Jackson at 324.

The Jackson standard must be applied with reference to the substantive elements of the criminal offense as defined by state law. Jackson, 443 U.S. at 324 n.16; Windham, 163 F.3d at 1101. However, the minimum amount of evidence that the Due Process Clause requires to prove an offense is purely a matter of federal law. Coleman v. Johnson, - U.S. -, 132 S.Ct. 2060, 2064 (2012) (per curiam). For example, under Jackson, juries have broad discretion to decide what inferences to draw and are required only to draw reasonable inferences from basic facts to ultimate facts. Id.

Here, under California law, first degree murder includes a "willful, deliberate, and premeditated" killing. Cal. Pen. Code § 189. "Premeditated" means "thought over in advance" rather than "spontaneous." People v. Koontz, 27 Cal.4th 1041, 1080 (2002); People v. Perez, 2 Cal.4th 1117, 1123-24 (1992). "Deliberate" means "resulting from careful thought and weighing of considerations" rather than "hasty," "impetuous," "rash," or "impulsive." Perez, 2 Cal.4th at 1123-24. Premeditation and deliberation can occur in a brief period of time. People v. Thompson, 49 Cal.4th 79, 114-15 (2010). "The test is not time, but reflection. Thoughts may follow each other with great rapidity and cold, calculated judgment may be arrived at quickly." Thompson, 49 Cal.4th at 114 (quoting People v. Osband, 13 Cal.4th 622, 697 (1996)).

The evidence admitted in Petitioner's defense tended to show that Petitioner was dominated by Clara, whom he had met and married at a distant time and place before he learned that she was already married to William. Petitioner and Clara hid the true nature of their relationship from William. Petitioner complained of having to serve Clara sexually and provide physical care for William, whose

health was deteriorating. Petitioner respected William. However, the discovery of Clara and Petitioner in the act of sex had enraged William, who repeatedly stated that he would kill Petitioner; Petitioner was so fearful of William while William was in that state of rage that Petitioner did not think or remember clearly. (Pet., doc. 1, 23-29.)

Although the evidence might have warranted an inference that Petitioner reasonably or unreasonably acted to defend himself from the aggression of William, this Court must view the evidence through the lens of the Jackson standard, which requires assuming that the trier of fact resolved all conflicts in the evidence in favor of the verdict. Evidence that Petitioner stabbed William once, waited for an appreciable period, and then returned to kill William with multiple blows from the same weapon was sufficient to warrant a reasonable trier of fact in inferring that Petitioner thought about killing William in advance and acted after having reflected on the consequences. Further, the jury may have concluded that Petitioner's ultimate use of deadly force was independent of any threat presented by William, disproportionate to any threat presented by William, or otherwise unnecessary. In Petitioner's most favorable version of the evidence, Petitioner acted defensively; however, in light of the totality of the circumstances, the evidence that Petitioner desisted, re-approached William, and repeatedly inflicted mortal stab wounds supported an inference that Petitioner committed a deliberate and premeditated killing.

In California, second degree murder is the unlawful killing of a human being with malice aforethought but without the additional elements, such as use of specified means or proof of additional

mental states such as willfulness, premeditation, and deliberation, that would support a conviction for first degree murder. Cal. Pen. Code §§ 187(a), 189; People v. Knoller, 41 Cal.4th 139, 151 (2007). Malice may be either express, where there is manifested a deliberate intention to take away the life of a fellow creature, or implied, where there is an absence of considerable provocation, or when the circumstances attending the killing show an abandoned and malignant heart. Cal. Pen. Code § 188. The test for implied malice was recently reaffirmed and restated as follows:

> Malice is implied when the killing is proximately caused by "an act, the natural consequences of which are dangerous to life, which act was deliberately performed by a person who knows that his conduct endangers the life of another and who acts with conscious disregard for life." (*People v. Phillips*, *supra,* at p. 587, 51 Cal.Rptr. 225, 414 P.2d 353.) In short, implied malice requires a defendant's awareness of engaging in conduct that endangers the life of another--no more, and no less.

People v. Knoller, 41 Cal.4th at 143.

Here, the Petitioner's admission that he repeatedly approached the victim and the evidence of multiple stab wounds to the chest and back (doc. 1, 17) warrant a reasonable finder of fact in concluding that Petitioner was conscious of the danger to life created by his conduct and acted in conscious disregard of human life.

Further, although Petitioner denied having killed Clara, the similarity of wounds inflicted on the two victims and the position of the bodies supported an inference that Petitioner had killed both victims. (Id.)

The Court concludes that applying Jackson standards, Petitioner's claim or claims of the insufficiency of the evidence are without merit. Thus, Petitioner's claims that counsel was

14

ineffective for failing to raise the insufficiency of the evidence are likewise without merit.

Petitioner argues that his counsel was ineffective because in the petition for review filed in state court, counsel stated that Petitioner's extrajudicial statement that he had stabbed the victim, departed, and then returned twenty minutes later and stabbed him again, was the basis for the jury's finding of premeditation and deliberation. However, such a statement merely describes one possible set of inferences already drawn by the trier of fact; it did not undermine any defense and did not amount to a concession in argument that there is no reasonable doubt of guilt.

In the reply to the opposition to Petitioner's motion for a stay, Petitioner alleges that he suffered a violation of due process of law when jewelry that he took from the house was shown to the jury because the jewelry was his and bore his initials. Petitioner seeks the return of his jewelry. However, this claim does not relate to the legality or duration of Petitioner's confinement or otherwise affect the foregoing analysis of the sufficiency of the evidence.

Accordingly, Petitioner's motion for a <u>Rhines</u> stay should be denied because the claims which Petitioner seeks to raise are plainly without merit. The Court should proceed to schedule a deadline for the filing of Petitioner's traverse.

In an abundance of caution, because ruling on Petitioner's motion for a stay could be viewed as effectively foreclosing a federal forum for Petitioner's claims of IAC and insufficiency of the evidence, the undersigned will proceed by findings and recommendations.

///

### III. Recommendations

In accordance with the foregoing, it is RECOMMENDED that:

1) Petitioner's motion for a <u>Rhines</u> stay be DENIED; and

2) The previously suspended deadline for the filing of Petitioner's traverse be set for no later than thirty (30) days after service of the Court's order denying Petitioner's motion for a stay.

These findings and recommendations are submitted to the United States District Court Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty (30) days after being served with a copy, any party may file written objections with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Replies to the objections shall be served and filed within fourteen (14) days (plus three (3) days if served by mail) after service of the objections. The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:  **September 15, 2014**        /s/ *Barbara A. McAuliffe*
                                                               UNITED STATES MAGISTRATE JUDGE